IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEHICLE OPERATION TECHNOLOGIES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No 13-538-SLR |
| BMW OF NORTH AMERICA, LLC, | ) ) | |
| Defendant. | ) ) | |
| VEHICLE OPERATION TECHNOLOGIES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No 13-712-SLR |
| MITSUBISHI MOTORS NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS
BMW OF NORTH AMERICA LLC AND
<u>MITSUBISHI MOTORS NORTH AMERICA, INC. FOR RULE 11 SANCTIONS</u>**

OF COUNSEL:
Lionel M. Lavenue
Finnegan, Henderson, Farabow,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
(571) 203-2700

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, D.C.
(202) 408-4000

SHAW KELLER LLP
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
300 Delaware Avenue
Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Defendant*
*BMW of North America, LLC*

OF COUNSEL:
BIRCH STEWART KOLASCH BIRCH, LLP
Charles Gorenstein
Michael T. Smith
Ali M. Imam
8110 Gatehouse Road
Suite 100 East
Falls Church, VA 22042
(703) 205-8000

Dated: September 30, 2013

O'KELLY, ERNST, BIELLI, LLC
Sean T. O'Kelly (No. 4349)
901 N. Market Street, Suite 1000
Wilmington, DE 19801
sokelly@oeblegal.com
(302) 778-4000
*Attorneys for Defendant*
*Mitsubishi Motors North America, Inc.*

ii

## TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT - THE INVENTOR UNEQUIVOCALLY
    DISCLAIMED ANY ACCUSED PRODUCT WITH MULTI-
    FUNCTION DISPLAYS, PRECLUDING ANY POSSIBLE
    INFRINGEMENT THEORY ............................................................................. 1

II. INTRODUCTION - VOT'S REFUSAL TO WITHDRAW THE
    BASELESS CLAIMS OF PATENT INFRINGEMENT HAS FORCED
    DEFENDANTS TO SEEK DISMISSAL AND MONETARY
    SANCTIONS UNDER RULE 11 ...................................................................... 2

III. NATURE OF THE PROCEEDINGS - VOT'S PATENT
     INFRINGEMENT CLAIMS ARE RIPE FOR EARLY DISPOSITION
     UNDER RULE 11 ........................................................................................... 4

IV. LEGAL STANDARDS - RULE 11 IS A REMEDY FOR FRIVOLOUS
    PATENT CLAIMS, ALLOWING FOR DISMISSAL AND SANCTIONS.......... 5

    A.  Rule 11 Discourages Baseless and/or Frivolous Pleadings,
        Especially in the Third Circuit, Applying a Test of "Objective
        Reasonableness" ..................................................................................... 5

        1.  Rule 11 Allows for Dismissal of Frivolous Patent Claims ............. 6

        2.  Rule 11 Also Allows for Sanctions for Frivolous Patent
            Claims ........................................................................................... 7

    B.  Patent Scope Disclaimed In Prosecution Cannot Later Be
        Reclaimed ................................................................................................ 7

V.  ARGUMENT - VOT'S ALLEGATIONS THAT DEFENDANTS
    INFRINGE THE '442 PATENT'S "DEDICATED DISPLAYS" ARE
    OBJECTIVELY BASELESS AND THUS RUN AFOUL OF RULE 11 ............. 9

    A.  VOT Violated Rule 11 by Failing to Conduct an Objective,
        Reasonable Pre-Suit Investigation, Which Would Have Quickly
        Revealed That Defendants' Products Use Multi-Function Displays ........ 10

    B.  An Objective, Pre-Suit Investigation by VOT Would Have
        Revealed That the Inventor Clearly Disclaimed Multi-Function
        Displays, Exactly Like the Multi-Function Displays in the Accused
        Products.................................................................................................. 11

    C.  Because VOT Failed to Conduct a Proper Pre-Suit Investigation,
        Dismissal of the Offending Complaint is Appropriate Under Rule
        11........................................................................................................... 16

D.    Because VOT Continues to Pursue Entirely Baseless Claims,
Despite Repeated Warnings, Sanctions Are Also Appropriate
under Rule 11 ............................................................................................ 17

VI.    CONCLUSION:  BOTH DISMISSAL WITH PREJUDICE AND
MONETARY SANCTIONS ARE APPROPRIATE IN THESE CASES ........... 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002)......................................................................6, 9

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
    713 F.3d 1090 (Fed. Cir. 2013)..........................................................................8

*Computer Docking Station v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)..........................................................................8

*Doering v. Union County Bd. of Chosen Freeholders*,
    857 F.2d 191 (3d Cir. 1988).......................................................................4, 6, 16

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990).......................................................................16, 17

*Eon- Net LP v. Flagstar Bancorp.*,
    653 F.3d 1314 (Fed. Cir. 2011)..........................................................................9

*Gaiardo v. Ethyl Corp.*,
    835 F.2d 479 (3d Cir. 1987)................................................................................7

*Henry v. Gill Indus., Inc.*,
    983 F.2d 943 (9th Cir. 1993) ..............................................................................6

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000)............................................................................8

*Insituform Techs., Inc., v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996)............................................................................8

*Judin v. U.S.*,
    110 F.3d 780 (Fed. Cir. 1997)............................................................................6

*Lease v. Fishel*,
    712 F. Supp. 2d 359 (M.D.Pa. 2010) .............................................................6, 17

*Lieb v. Topstone Indus.*,
    788 F.2d 151 (3d Cir. 1986)...........................................................................5, 6, 7

*Lony v. E.I. Du Pont de Nemours & Co.*,
    935 F.2d 604 (3d Cir. 1991)................................................................................6

*Marina Management Services, Inc. v. Vessel My Girls,*
    202 F.3d 315 (D.D.C. 2000) ..........................................................6, 16

*Norian Corp. v. Stryker Corp.,*
    432 F.3d 1356 (Fed. Cir. 2005)..........................................................8

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003)..................................................7, 8, 12

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,*
    170 F.3d 1373 (Fed. Cir. 1999)..........................................................15

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir.2005) (en banc)..............................................3

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.,*
    517 F.3d 1364 (Fed. Cir. 2008)..........................................................9

*Rhinehart v. Stauffer,*
    638 F.2d 1169 (9th Cir. 1979) ..........................................................6

*Schindler Elevator Corp. v. Otis Elevator Co.,*
    593 F.3d 1275 (Fed. Cir. 2010)..........................................................8

*Southwall Technologies, Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995)..........................................................9

*Tech. Innovations, LLC v. Amazon.com, Inc.,*
    C.A. No. 11-690-SLR, Order (D.I. 110) (D. Del. Aug. 15, 2013) ...................16

*uShip Intellectual Properties, LLC v. U.S.,*
    714 F.3d 1311 (Fed. Cir. 2013)..........................................................8

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
    208 F.3d 981 (Fed. Cir. 2000)..........................................................7

*Vita–Mix Corp. v. Basic Holding, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009)..........................................................8

**Rules**

Fed. R. Civ. P. 11(c)(1)..........................................................................7

Fed. R. Civ. P. 11(c)(4)..........................................................................7

Rule 11 ................................................................................ passim

Rule 11(b) ..........................................................................................5

vi

## I.   SUMMARY OF ARGUMENT - THE INVENTOR UNEQUIVOCALLY DISCLAIMED ANY ACCUSED PRODUCT WITH MULTI-FUNCTION DISPLAYS, PRECLUDING ANY POSSIBLE INFRINGEMENT THEORY

Defendants BMW of North America, LLC ("BMW") and Mitsubishi Motors North America, Inc. ("MMNA," hereinafter collectively "Defendants") move for dismissal of the patent infringement claims asserted by Plaintiff Vehicle Operation Technologies, LLC ("VOT") and for sanctions under Rule 11.  During prosecution of the single patent at issue (U.S. Patent No. 7,145,442, or the "'442 patent"), the inventor (Yu Hei Sunny Wai, prosecuting the patent application *pro se*) repeatedly and unambiguously stated that his invention does not use multi-function displays to convey information about certain operating conditions of the vehicle to the driver; instead, the inventor unequivocally stated during patent prosecution that the invention is limited to "dedicated displays" for showing those conditions.  VOT is well aware—and cannot dispute—that all of BMW's and MMNA's accused vehicles use multi-function displays, ***not*** dedicated displays as the inventor has characterized his invention, to provide representations of the specified vehicle information.  Thus, the inventor, in the public record of the '442 patent, irrevocably disclaimed any patent scope that could have arguably included multi-function displays. Therefore, there is absolutely no basis in law or fact for VOT to now assert the '442 patent against the very devices that the inventor said were not part of his invention.  Simply, VOT's allegations cannot pass muster under the objective reasonableness standard of Rule 11, as applied by the Third Circuit and this District.  The clear disavowal of patent scope for multi-function displays is not an issue that requires detailed claim construction and/or other factual development through discovery, making these cases ready for an immediate ruling on this Rule 11 motion for dismissal and sanctions.

## II.   INTRODUCTION - VOT'S REFUSAL TO WITHDRAW THE BASELESS CLAIMS OF PATENT INFRINGEMENT HAS FORCED DEFENDANTS TO SEEK DISMISSAL AND MONETARY SANCTIONS UNDER RULE 11

Since the beginning of these cases, Defendants have attempted to avoid Rule 11 motion practice.  VOT, however, has repeatedly ignored multiple opportunities provided by Defendant BMW to address the unmistakable patent disclaimer issue that none of BMW's accused vehicles use a "dedicated display" and, therefore, cannot infringe the '442 patent.  Indeed, BMW has warned VOT's counsel[1] about the implications of VOT's baseless allegations on at least five occasions, and all defendants raised the issue on at least three occasions (including in connection with preparation of a pretrial order in this matter).  Soon after answering VOT's Complaint, BMW sent two separate letters to VOT's counsel – the first, on July 17, 2013, explaining how clear disclaimers made by the inventor during prosecution of the '442 patent application regarding multi-function displays plainly excluded any of BMW's products from the scope of the asserted claims (Ex. 2), and the second, on August 5, 2013, detailing the grounds for BMW's imminent Rule 11 motion, if VOT failed to withdraw its unsupportable patent allegations.  Ex. 3.

BMW and MMNA (and the other Defendants in the related cases) further apprised VOT for a third time of the frivolity of its baseless claims when negotiating the proposed scheduling order, advising that an early claim construction procedure was needed to address the inventor's clear disavowal of multi-function displays from the asserted claim scope (and the associated limitation of the claim scope to dedicated

---

[1] VOT filed a Notice of Withdrawal of its outside counsel, the Russ, August, & Kabat law firm on September 25, 2013.  D.I. 20.  Defendants communications with VOT's counsel referenced herein were conducted with attorneys of the VOT's now-withdrawn outside counsel from the Russ, August, & Kabat law firm.  As of the filing of this motion, only VOT's Delaware counsel, Bayard, P.A., remains in this case as counsel to VOT.

displays). Fourth, at the August 6, 2013 scheduling conference, BMW again warned VOT's counsel of the risks of asserting its baseless claims, specifically reiterating to VOT that BMW planned to move for sanctions under Rule 11 if VOT failed to withdraw its unfounded claims. And, fifth and finally, and as required by Rule 11, on September 4, 2013, BMW and MMNA served VOT with a copy of this motion by FedEx, confirming that, unless VOT voluntarily dismissed its allegations within 21 days, BMW and MMNA would file this motion for both dismissal and sanctions.

Incredibly, VOT ignored each and every one of these warnings, failing to respond in any way, other than to acknowledge receipt of BMW's letters, until Defendants served the present motion on VOT's counsel under the 21-day "safe harbor period." During this safe harbor period, VOT's counsel finally responded and requested a meet and confer with Defendants, which occurred on September 16, 2013. At the meet and confer, VOT's counsel, for the first time, orally presented arguments attempting to justify VOT's infringement allegations. Following the meet and confer, on September 23, 2013, VOT's counsel also provided Defendants with a written summary of VOT's positions (and, two days later, on September 25, 2013, VOT's counsel withdrew from this case). Ex. 1. While VOT's written summary offered attorney argument that the claimed "display" should not be limited to a "dedicated" display, the addition of attorney argument does not mean that VOT's interpretation of the claims is objective or reasonable. Indeed, and as Defendants will explain fully in a reply to VOT's opposition, VOT's positions unreasonably attempt to read the claims in vacuum, improperly ignoring the clear disclaimer repeated by the *pro se* inventor throughout the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir.2005) (en banc) ("'We cannot look at the

ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary

meaning in the context of the written description and the prosecution history.'") (quoting

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).  After receipt

of VOT's written summary, the Defendants (and particularly BMW and MMNA) advised

VOT that the summary did not resolve the Rule 11 issues and that Defendants (and

particularly BMW and MMNA) still planned to file the motion upon the expiration of the

safe harbor period, or on September 30, 2013.  Soon thereafter, VOT's counsel withdrew

from the case, leaving it only in the hands of Delaware counsel.

   After BMW and MMNA warned counsel for VOT that this Rule 11 motion would

be filed, Defendants BMW and MMNA, sincerely hoped that VOT would withdraw its

baseless case without Court intervention, but VOT has refused reason, disassociating its

law firm and forcing the Defendants to file and pursue a Rule 11 dismissal and sanctions.

Specifically, BMW and MMNA seek a dismissal of the patent claims with prejudice, as

authorized by the Third Circuit in *Doering v. Union County Bd. of Chosen Freeholders*,

857 F. 2d 191, 194 (3d Cir. 1988) (finding that dismissal of baseless claims is an

appropriate sanction under Rule 11) (citations omitted) as well as to recoup any and all

attorneys' fees and costs associated with defending VOT's baseless patent claims.

## III. NATURE OF THE PROCEEDINGS - VOT'S PATENT INFRINGEMENT CLAIMS ARE RIPE FOR EARLY DISPOSITION UNDER RULE 11

   VOT filed its complaint for patent infringement against BMW on April 5, 2013,[2]

and BMW answered the complaint on June 3, 2013.  The complaint against MMNA was

---

[2] On April, 5, 2013, VOT filed five other cases, including cases against Honda Motor
Co., Inc. ("Honda") (C.A. No 13-537-SLR); Ford Motor Company ("Ford") (C.A. No 13-
539-SLR); General Motors, LLC ("GM") (C.A. No 13-540-SLR); Nissan North America,
Inc. ("Nissan") (C.A. No 13-541-SLR); and Porsche Cars North America, Inc.
("Porsche") (C.A. No 13-542-SLR).  BMW and MMNA understand that these other

filed on April 23, 2013, and MMNA answered on June 14, 2013. This Court held an

initial scheduling conference on August 6, 2013, and this Court issued a schedule on

August 27, 2013.  At the scheduling conference, in responding to questions from the

Court, BMW informed VOT that VOT's infringement allegations completely lacked

foundation in law or fact because of the inventor's repeated patent disclaimers and, as a

result, that the cases are ripe for immediate dismissal without the need for discovery or

extensive claim construction.  (At the hearing, counsel for BMW also requested leave to

file this Rule 11 motion, which the Court granted.)

## IV.   LEGAL STANDARDS - RULE 11 IS A REMEDY FOR FRIVOLOUS PATENT CLAIMS, ALLOWING FOR DISMISSAL AND SANCTIONS

### A.   Rule 11 Discourages Baseless and/or Frivolous Pleadings, Especially in the Third Circuit, Applying a Test of "Objective Reasonableness"

Rule 11 provides a remedy for pleadings that are "frivolous, legally unreasonable,

or without factual foundation, even though … not filed in subjective bad faith."  *Lieb v.*

*Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986).  Rule 11(b) provides in pertinent part:

> By presenting to the court a pleading, written motion, or
> other paper – whether by signing, filing, submitting, or later
> advocating it – an attorney or unrepresented party certifies
> that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the
> circumstances . . . .
>
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary
> support after a reasonable opportunity for further
> investigation or discovery….

---

Defendants may file a similar Rule 11 motion with different requested relief, but the basis
for the Rule 11 motions will be the disclaimer of patent scope during prosecution of the
patent at issue.  Because the requests for relief differ, there are slight differences in the
facts among Defendants that support the different relief sought, and to avoid needless
confusion, two briefs will be submitted.  But, for *all* defendants in the coordinated cases
joining in any motions, dismissal pursuant to Rule 11 is warranted based on the clear and
unambiguous disclaimer of patent scope that excludes all of the accused vehicles.

The regional-circuit law determines the parameters for the application of Rule 11. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).

In the Third Circuit, to determine whether a case is frivolous under Rule 11, there is a well-established test of "***objective reasonableness***," which discourages pleadings "without factual foundation, even though the paper was not filed in subjective bad faith." *Lony v. E.I. Du Pont de Nemours & Co*., 935 F.2d 604, 616 (3d Cir. 1991) (emphasis added; citation omitted). Significantly, in the application of this Rule 11 "objective reasonableness test" in the Third Circuit, "[t]here is no room for a pure heart, empty head defense." *Lieb v. Topstone Indus.*, 788 F.2d 151,157 (3d Cir. 1986).

### 1.    Rule 11 Allows for Dismissal of Frivolous Patent Claims

"Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay." *Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997). In the Third Circuit, dismissal of cases founded on objectively baseless filings is appropriate. *Doering*, 857 F.2d at 194 ("Other sanctions that could be appropriate … include … dismissal of baseless claims or defenses"); *Lease v. Fishel*, 712 F. Supp. 2d 359, 368 (M.D. Pa. 2010) ("The court can impose … non-monetary sanctions, which can include: . . . dismissal of baseless claims").[3] Dismissal is an appropriate sanction when lessor sanctions would be ineffective, such as when the entire case is frivolous. *See Marina,* 202 F.3d at 325 (citing *Dodson v. Runyon*, 86 F.3d 37, 39-40 (2d Cir. 1996); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).

---

[3] Courts in other districts have reached a similar conclusion. *See Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) ("A district court has the power to dismiss a complaint if it is frivolous or brought for some ulterior purpose") (citing *Brown v. District Unemployment Compensation Board*, 411 F. Supp. 1001, 1001-02 (D.D.C. 1975)); *Marina Management Services, Inc. v. Vessel My Girls,* 202 F.3d 315, 325 (D.D.C. 2000) ("Dismissal is a legitimate sanction under Rule 11") (citations omitted).

### 2.       Rule 11 Also Allows for Sanctions for Frivolous Patent Claims

"A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  With that in mind, "a court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).  "Payment … of the reasonable attorney's fees and other expenses directly resulting from the violation" is an appropriate sanction.  Fed. R. Civ. P. 11(c)(4).

The Third Circuit has confirmed that, once a violation of Rule 11 has been found, the award of attorneys' fees is within the discretion of the Court.  *Lieb*, 788 F.2d at 155-56.  In the Rule 11 analysis, a court may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 156.  In addition to these factors, the Third Circuit has held that monetary sanctions have a dual effect, as "requiring the offending client, lawyer, or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation . . .  combines the concepts of deterrence and reimbursement for the wronged party." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir. 1987).

### B.       Patent Scope Disclaimed In Prosecution Cannot Later Be Reclaimed

It is black letter law that statements made by an applicant during prosecution of a patent may result in disclaimer of patent scope.  *See Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 1323 (Fed. Cir. 2003)("[t]he doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through

claim interpretation specific meanings disclaimed during prosecution"); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

"Prosecution history disclaimer plays an important role in the patent system." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of intrinsic evidence and protects the public's reliance on definitive statements made during prosecution. *See Omega Eng'g*, 334 F. 3d at 1324 (citation omitted).

A patentee "is not entitled to any interpretation that is disclaimed during prosecution." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010). "A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he would otherwise have an exclusive right by virtue of the claim language." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009) (citation omitted); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334 at 1326. "[A] disavowal, if clear and unambiguous, can lie in a single distinction among many." *Computer Docking Station v. Dell, Inc.*, 519 F.3d 1366, 1377 (Fed. Cir. 2008) (citation omitted); *see also Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005) (reciting similar conclusion).

It is of no moment if the applicant disclaimed, or surrendered, more than was necessary. *See uShip Intellectual Properties, LLC v. U.S.,* 714 F.3d 1311, 1315 (Fed. Cir. 2013) ("[t]he analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive"); *Insituform Techs., Inc., v. Cat Contracting, Inc.*, 99 F.3d 1098, 1107–08 (Fed. Cir. 1996). Further, "arguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of

that term in every claim of the patent absent a clear indication to the contrary." *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995). Additionally, "the presumption created by the doctrine of claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.'" *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (citation omitted).

## V.   ARGUMENT - VOT'S ALLEGATIONS THAT DEFENDANTS INFRINGE THE '442 PATENT'S "DEDICATED DISPLAYS" ARE OBJECTIVELY BASELESS AND THUS RUN AFOUL OF RULE 11

Rule 11 required VOT's counsel to conduct "a reasonable pre-suit investigation" and "perform an objective evaluation of the [patent] claim terms when reading those terms on the accused device." *Eon- Net LP v. Flagstar Bancorp.*, 653 F. 3d 1314, 1328-29 (Fed. Cir. 2011) (upholding an award of Rule 11 sanctions where infringement theory contradicted patent specification, which "expose[d] the frivolity of [plaintiff's] claim construction position").  Thus, a violation of Rule 11 occurs when an objectively reasonable attorney would not believe, based on actual evidence uncovered during the pre-suit investigation, that each claim limitation actually reads on the accused device, either literally or under the doctrine of equivalents.  *Antonious*, 275 F.3d at 1074.

Here, VOT did not conduct an adequate pre-suit investigation, for any reasonable investigation would have revealed that the asserted claims require "dedicated displays," but the accused BMW and MMNA products include multi-function displays.  Thus, VOT could <u>not</u> have objectively believed, based on the intrinsic evidence (from the prosecution history of the '442 patent) uncovered during the pre-suit investigation, that each claim limitation actually reads on any of the accused products.  Indeed, even a cursory comparison of the prosecution history of the '442 patent to the publically available

information about the accused products clearly reveals (without expert analysis) the frivolity of VOT's infringement allegations, as the accused products all incorporate features expressly disclaimed by the inventor, absolutely precluding any infringement.

### A.    VOT Violated Rule 11 by Failing to Conduct an Objective, Reasonable Pre-Suit Investigation, Which Would Have Quickly Revealed That Defendants' Products Use Multi-Function Displays

BMW's and MMNA's vehicles and publically-available owner's manuals indisputably demonstrate that all of the accused products include *multi-function* displays that display a variety of different content and messages at different times, precisely what the inventor said cannot comprise his invention. The use of multi-function displays in Defendants' vehicles clearly precludes them from infringing the required "dedicated displays," a fact that an objective, reasonable pre-suit investigation would have revealed.

Specifically, VOT has accused the BMW "X5 M & X6 vehicles and other [BMW] vehicles equipped with BMW's Dynamic Performance Control system," and MMNA's vehicles equipped with Mitsubishi's Super All Wheel Control ("SAWC") system of infringing unspecified claims of the '442 patent.  The "Control Display" in BMW's X6 vehicles, as described in the 2013 BMW X6 Owner's Manual (Ex. 4), depicts



a wide array of information and media for the vehicle driver, ranging from the

temperature of the driver's seat to interactive maps to video content from DVDs (all of which are depicted above).  *See, e.g.,* Ex. 4, at 19-21 (control display in general); 53 (seat temperature display); 175 (interactive map display); 202 (DVD content).  Notably, this information is publicly-available online at http://www.bmwusa.com/Standard/ Content/Owner/OwnersManualVideos.aspx?namodelcode=13XL.

The accused MMNA vehicles utilize what is identified in the publicly-available owner's manual as a "Multi-information display" (See illustration below from owner's manual).  Using the "Multi information meter switch" (illustrated below) the vehicle operator may select to have displayed any one of an odometer (as seen in the illustration), a trip odometer, service reminders, coolant temperature, cruising distance, fuel efficiency, warnings, a function setting screen or information relating to the SAWC function.



**B.    An Objective, Pre-Suit Investigation by VOT Would Have Revealed That the Inventor Clearly Disclaimed Multi-Function Displays, Exactly Like the Multi-Function Displays in the Accused Products**

In sharp contrast to the accused products, all of which incorporate multi-function displays, the prosecution history makes abundantly clear to any objective investigator that the claims of the '442 patent require "dedicated displays."  For example, the '442 patent is ostensibly directed to "an apparatus, method, system and/or image editing process for presenting *visual displays* to the driver of a motor vehicle regarding the real time

operating condition of the vehicle systems and components." '442 patent, Abstract (emphasis added). Indeed, each and every claim of the '442 patent requires a specific display.[4] In the record of prosecution of the '442 patent, which provides notice to the public about the patent's scope (*See Omega Eng'g*, 334 F.3d at 1324), Mr. Wai unequivocally limited the specific displays in the patent to "dedicated displays" by distinguishing the dedicated displays disclosed in the '442 patent from the multi-function displays in the prior art. These clear patent disclaimers, made in both the specification and prosecution history, preclude any of Defendants' accused products from infringing.

Any reasonable pre-suit investigation would have uncovered that, by repeatedly emphasizing that the "visual display" of the '442 patent must be a "dedicated display" apprising the driver of the claimed real-time operating conditions of the vehicle at all times, the inventor (Mr. Wai) explicitly disclaimed multi-function displays that provide a driver with viewing options at different times. The figures from the '442 patent also reflect Mr. Wai's repeated statements, depicting dedicated displays that require torque, braking force, and/or other vehicle operating parameters to be displayed at *all times*, as opposed to multi-function displays in the prior art (and Defendants' products).



---

[4] Claim 1 requires "at least one display means;" claim 7 requires "at least one display device;" claims 10, 16, 21, and 29 require "a display device;" claim 36 requires "a display;" and claim 41 requires "at least one display device."

(Figure 1 of the '442 patent is a dedicated display for a scalar bar diagram image of the braking force; Figure 2 of the '442 patent is a dedicated display of the amplitude of the braking force and the turning angle of the wheels; and similarly, Figure 16 of the '442 patent is a dedicated display for information about torque, braking, and steering angle).

Indeed, examples of Mr. Wai's substantive disclaimers of the multi-function displays in the prior art are replete throughout the specification and prosecution history:

- With respect to the Berkert reference, Mr. Wai distinguished the reference from his alleged invention by telling the PTO that "[t]he system disclosed [in the Berkert reference] utilizes a standard computer oriented selection method for access to the display information. *It [the Berkert reference] is not a dedicated system which always presents specific types of information at all times as is done with the present invention.*"  Ex. 5 ('442 Patent Prosecution History, Nov. 14, 2005 Amendment), at 14.  Thus, Mr. Wai contrasted the claimed invention, which uses dedicated displays, with the Berkert reference, which uses a multi-function display (not a dedicated display), stating that "Berkert, et al., discloses a system based upon a computer program without the utilization of a dedicated display." '442 Patent, at 2:21-23.



- With respect to the Hauler reference, Mr. Wai emphasized the point as to dedicated displays, by declaring that "[Hauler's] displays *are not dedicated displays as with the present invention* . . . The disclosed 'freely programmable instrument cluster' *is intended to provide the driver with a variety of options* for the review of operational parameters. *The [Hauler] patent thus does not disclose or teach the present invention.*" Ex. 5, at 12.

13

**Fig. 2a**



- Concerning the Jaberi reference, Mr. Wai emphasized that "[t]he device and method disclosed [in Jaberi] *are not dedicated display means* and utilize a filtering process whose logic determines what is to be presented. *This is remote from and does not teach the present invention.*" *Id.* at 13.



- As to the Haubner reference, Mr. Wai made clear that "[t]he disclosure [in Haubner] *is of a complex display means having multiple presentations* and is primarily concerned with the manner of processing the information. . . . Further, the presentations are lumped into a series of 6 blocks and *are not independent dedicated displays.*" *Id.* at 14. Mr. Wai again distinguishes his alleged invention, which requires "dedicated displays," from prior art systems, which used multi-function displays (or "complex display means having multiple presentations").



All of these statements by Mr. Wai during patent prosecution to the Examiner at the PTO

plainly establish that the '442 patent requires a "dedicated display" and that the alleged

invention does not cover or encompass multi-function displays. Also, the "dedicated displays" of the '442 patent clearly differ from the multi-function prior art displays because the prior art displays could display different parameters at different times.

Therefore, Mr. Wai left no doubt as to the difference between the "dedicated displays" that he claimed as his "invention," which only communicate information about a single vehicle operating parameter or set of parameters to the driver, with the prior art that he repeatedly noted used multi-function displays. In Mr. Wai's own words, he distinguished multi-function displays that "provide the driver with a *variety of options* for the review of operational parameters" from his dedicated displays. Ex. 5, at 12. Therefore, Mr. Wai's explicit disclaimers, as supported by the intrinsic evidence, "evince a clear and unmistakable surrender" of multi-function displays, so that VOT cannot credibly claim that BMW's or MMNA's multi-function displays literally or equivalently infringe the "dedicated displays" of the '442 patent. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999) ("[p]rosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application"). For VOT to have a tenable case against Defendants that is not objectively baseless, and to avoid violating Rule 11, there must be an accused product with a display *dedicated* to apprise the driver of some operating condition of the vehicle *at all times*.

Yet, none of BMW's or MMNA's accused products contain dedicated displays. As the above examples from Defendants' owner's manuals clearly show, both BMW's and MMNA's multi-function displays, like the prior art that Mr. Wai explicitly disclaimed, and in contrast to the dedicated displays of the asserted patent claims,

15

"provide the driver with a variety of options for the review of operational parameters."
*See* Ex. 5, at 12.  Indeed, in direct contrast to the dedicated displays that Mr. Wai
described, Defendants' multi-function displays do not always provide the driver with
information about real-time operating conditions of the vehicle.  In short, none of
BMW's or MMNA's accused products can possibly infringe any claim of the '442 patent,
at least because all of the accused products indisputably lack a "dedicated display."  No
objectively reasonable attorney could have fairly concluded otherwise.

### C.    Because VOT Failed to Conduct a Proper Pre-Suit Investigation, Dismissal of the Offending Complaint is Appropriate Under Rule 11

Because VOT failed to conduct an adequate pre-suit investigation of the asserted
patent and/or the accused products, evidenced by VOT's assertion of patent claims
directed towards "dedicated displays" against products with multi-function displays,
when those very same features were disclaimed during patent prosecution, the complaints
against BMW and MMNA are "frivolous, legally unreasonable, or without factual
foundation" and, thus, a violation of Rule 11.  Dismissal of the complaints is an
appropriate sanction, where, as here, the entire case is frivolous and lesser sanctions
would be ineffective.  *See Marina,* 202 F.3d at 325.  *See also Eltech Sys. Corp. v. PPG
Indus., Inc*., 903 F.2d 805, 810-11 (Fed. Cir. 1990) (finding Rule 11 violation "[w]here
… the patentee is manifestly unreasonable in assessing infringement, while continuing to
assert infringement in court"); *see generally, Tech. Innovations, LLC v. Amazon.com,
Inc.*, C.A. No. 11-690-SLR, Order (D.I. 110) (D. Del. Aug. 15, 2013).

In this Circuit and in this District, either dismissal or monetary sanctions have
been deemed appropriate for violations under Rule 11.  *See Doering*, 857 F.2d at 194 (3d
Cir. 1988) ("Other sanctions that could be appropriate in some circumstances, and that

may take the place of a monetary award, include . . . dismissal of baseless claims or defenses"); *Lease v. Fishel*, 712 F. Supp. 2d at 368 ("The court can impose monetary sanctions such as attorney fees or penalties, or non-monetary sanctions, which can include: . . . dismissal of baseless claims"); *see also* Ex. 6 (Transcript from August 6, 2013 Scheduling Conference), at 16:3-6 ("Rule 11 … carries with it sanctions besides just dismissal," Robinson, J.).  Due to the disregard of the Rule 11 requirements of a pre-suit investigation, as displayed by VOT by filing this lawsuit against BMW's and MMNA's multi-function display products (and five additional lawsuits against other automobile manufacturers with similar multi-function displays), when the patent claims are limited to dedicated displays, dismissal with prejudice is the appropriate remedy.

### D.   Because VOT Continues to Pursue Entirely Baseless Claims, Despite Repeated Warnings, Sanctions Are Also Appropriate under Rule 11

Here, dismissal alone (albeit with prejudice) cannot adequately deter VOT's improper actions, because VOT's actions have gone beyond simply the filing of seven baseless complaints.  Indeed, VOT has continued to recklessly maintain these cases (as well as the equally baseless claims against five other defendants) despite repeated warnings from BMW and other defendants, and despite the fact that VOT's own outside counsel chose to withdraw rather than continue to pursue this sham of a case, furthering VOT's clear Rule 11 violations.  *See Eltech Sys. Corp.*, 903 F.2d at 810-11 (finding that Rule 11 is violated "[w]here … the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court").  This additional action— remaining willfully blind in pursuit of claims that are baseless based on disclaimer—must also be deterred.  Thus, in addition to dismissal, monetary sanctions are appropriate.

Specifically, VOT turned a blind eye to the disclaimer of patent scope issue, despite the many warnings on at least five separate occasions to VOT's counsel that the infringement allegations are baseless.  Soon after answering VOT's complaint, BMW sent two separate letters to VOT's counsel – the first, on July 17, 2013, explaining how the clear, repeated disclaimers made by the inventor during prosecution of the '442 patent application excluded BMW's products from the scope of the asserted claims (Ex. 2), and the second, on August 5, 2013, detailing the bases for BMW's imminent Rule 11 motion, if VOT failed to withdraw its unsupportable allegations.  Ex. 3.  BMW further advised VOT that, if it failed withdraw the case (or explain its infringement theory as to the disclaimer issue), BMW would seek sanctions under Rule 11—a charge BMW later repeated on several occasions.  Since receiving BMW's notices, VOT failed to advance any objectively reasonable theory of infringement (because none exists).  Thus, continuing this case highlights an indifference by VOT as to the requirements of Rule 11, and such wrongful actions, beyond filing frivolous complaints, must also be deterred.

BMW and MMNA (and the other Defendants in the related cases) apprised VOT for a fourth time of the frivolity of its baseless claims when negotiating the proposed scheduling order, advising that an early determination was needed to address the inventor's clear disavowal of multi-function displays from the asserted claim scope. Despite this information, VOT continued to refuse to address BMW's warnings, foregoing further opportunities to espouse a plausible theory of infringement (which it cannot) or, otherwise, to withdraw its cases without penalty.  In fact, in responding to Defendants' proposal for an early determination of prosecution disclaimer (two weeks *after* BMW sent its first letter explaining why VOT's allegations were frivolous), VOT's

18

counsel claimed ignorance of the issue, asking that BMW and the other Defendants "please explain the basis for [their] belief that there was a prosecution disclaimer as to the term "display" in the independent claims?"  Ex. 8 (August 1, 2013 email from VOT's counsel to all Defendants).  Had VOT conducted even a cursory pre-suit investigation of the prosecution history, VOT would have discovered the clear and unequivocal disclaimers that Mr. Wai repeated both in the prosecution history and in the specification.

Stubbornly, VOT's counsel still refused to address the disclaimer issue after Defendants' counsel highlighted VOT's inadequate pre-suit investigation at the August 6, 2013 case scheduling conference, the fifth such warning to VOT.  There, counsel for BMW reiterated an intention to move for sanctions, if VOT failed to withdraw the case. Ex. 6, at 18:6-18 ("We [BMW] advised plaintiff's counsel that we did not believe that they had a basis [for their allegations] in July.  We sent them a follow-up letter … giving them full notice that we're preparing a Rule 11 motion."); *see also, id.* at 14:11-15:1.

As a fifth and final warning, and as required by Rule 11, on September 4, 2013, BMW and MMNA served VOT with a copy of this motion by FedEx, advising that, unless VOT voluntarily dismissed its allegations within 21 days, BMW and MMNA would file this motion for dismissal and sanctions.  Finally, in response to service of the present motion under the 21-day safe harbor period, VOT's counsel (before withdrawing from the case) presented attorney argument regarding the disclaimer issues during a September 16, 2013 meet and confer (and, later, by providing a written summary (Ex. 1)).  But, after BMW and MMNA advised that this Rule 11 motion would still be filed, VOT's counsel withdraw from the case on September 25, 2013.  D.I. 20.  These extraordinary facts, where VOT advances a manifestly unreasonable view of

19

infringement in view of repeated warnings, and particularly in view of the fact that VOT's *own* counsel may not have even been able to justify its allegations and withdrew, surely warrant an extraordinary sanction under Rule 11—that is, both (1) dismissal of the complaints with prejudice and (2) the recoupment of incurred attorney fees and costs.

## VI.    CONCLUSION:  BOTH DISMISSAL WITH PREJUDICE AND MONETARY SANCTIONS ARE APPROPRIATE IN THESE CASES

The alleged inventor of the sole patent in these lawsuits expressly and repeatedly disclaimed the exact type of displays used in BMW's and MMNA's accused products, unequivocally precluding any of those products from infringing.  Accordingly, no objectively reasonable pre-suit investigation of the allegations in these cases could have established a tenable case of patent infringement.  Thus, VOT violated Rule 11 for failing to conduct an adequate pre-suit investigation, warranting dismissal of these cases with prejudice.  In addition, because VOT has continued to violate Rule 11 by perpetuating these frivolous cases in the face of repeated warnings, monetary sanctions are also appropriate (at least since the time when VOT first had specific notice from BMW of the defects in its case).  Accordingly, because VOT stubbornly insists on maintaining its baseless allegations against Defendants, despite repeated warnings and its own counsel's choice to abandon this sinking ship, in addition to dismissal, VOT should also be ordered to reimburse BMW and MMNA for all attorneys' fees and costs incurred in this case since August 5, 2013, when BMW's second letter specifically warned VOT of the Rule 11 implications of continuing this case, along with any and all other remedies and/or sanctions that this Court deems appropriate based on the great exigencies of this case.

Respectfully submitted,

OF COUNSEL:                                        */s/ Karen E. Keller*
Lionel M. Lavenue                                  John W. Shaw (No. 3362)
Finnegan, Henderson, Farabow,                      Karen E. Keller (No. 4489)
GARRETT & DUNNER, LLP                              SHAW KELLER LLP
Two Freedom Square                                 300 Delaware Avenue
11955 Freedom Dr.                                  Suite 1120
Reston, VA 20190                                   Wilmington, DE 19801
(571) 203-2700                                     (302) 298-0700
                                                   jshaw@shawkeller.com
R. Benjamin Cassady                                kkeller@shawkeller.com
FINNEGAN, HENDERSON, FARABOW,                      *Attorneys for Defendant*
GARRETT & DUNNER, LLP                              *BMW of North America, LLC*
901 New York Avenue, NW
Washington, D.C.
(202) 408-4000


OF COUNSEL:                                        */s/ Sean T. O'Kelly*
Charles Gorenstein                                 Sean T. O'Kelly (No. 4349)
Michael T. Smith                                   O'KELLY, ERNST, BIELLI, LLC
Ali M. Imam                                        901 N. Market Street, Suite 1000
BIRCH STEWART KOLASCH BIRCH, LLP                   Wilmington, DE 19801
8110 Gatehouse Road                                sokelly@oeblegal.com
Suite 100 East                                     (302) 778-4000
Falls Church, VA 22042                             *Attorneys for Defendant*
(703) 205-8000                                     *Mitsubishi Motors North America, Inc.*

Dated: September 30, 2013