IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Vehicle Operation Technologies LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 13-537-RGA |
| **American Honda Motor Co. Inc.,** | |
| Defendant. | |
| **Vehicle Operation Technologies LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 13-538-RGA |
| **BMW of North America LLC,** | |
| Defendant. | |
| **Vehicle Operation Technologies LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 13-539-RGA |
| **Ford Motor Company,** | |
| Defendant. | |

**Vehicle Operation Technologies LLC,**

Plaintiff,

v.                                              Civil Action No. 13-540-RGA

**General Motors LLC,**

Defendant.

**Vehicle Operation Technologies LLC,**

Plaintiff,

v.                                              Civil Action No. 13-541-RGA

**Nissan North America Inc.,**

Defendant.

**Vehicle Operation Technologies LLC,**

Plaintiff,

v.                                              Civil Action No. 13-542-RGA

**Porsche Cars North America Inc.,**

Defendant.

**Vehicle Operation Technologies LLC,**

Plaintiff,

v.                                              Civil Action No. 13-712-RGA

**Mitsubishi Motors North America Inc.,**

Defendant.

MEMORANDUM OPINION

Richard D. Kirk, Esq., and Stephen B. Brauerman, Esq., Bayard, P.A., Wilmington, DE; Eric M. Buether, Esq. (argued), Buether Joe & Carpenter, LLC, Dallas TX, counsel for Plaintiff Vehicle Operation Technologies LLC.

Stephanie Roberts, Esq., Steptoe & Johnson LLP, Washington DC, counsel for Defendant American Honda Motor Co. Inc.

Frederick L. Cottrell, III, Esq., Richards, Layton & Finger, Wilmington, DE; Kristina N. Hendricks, Esq., Kirkland & Ellis LLP, Chicago, IL, counsel for Defendant Porsche Cars North America.

Benjamin J. Schladweiler, Esq., Seitz, Ross, Aronstam & Moritz LLP, Wilmington, DE, counsel for Defendants Nissan North America and Ford Motor Company.

Reginald J. Hill, Esq., Jenner & Block, Washington DC, counsel for Defendant Nissan North America.

Jason R. Mudd, Esq., Erise IP, P.A., Kansas City, KS, counsel for Defendant Ford Motor Company.

Sean T. O'Kelly, Esq., O'Kelly Ernst & Bielli, Wilmington, DE; Charles Gorenstein, Esq., Birch Stewart Kolasch & Birch LLP, Falls Church, VA, counsel for Defendant Mitsubishi North America.

Richard L. Horwitz, Esq., Potter, Anderson & Carroon LLP, Wilmington, DE; Marc A. Cantor, Esq., and Matthew M. Jakubowski, Esq., Brooks Kushman LLP, Detroit, MI, counsel for Defendant General Motors LLC.

Jeffrey T. Castellano, Esq., Shaw Keller LLP, Wilmington, DE; Lionel M. Lavenue, Esq. (argued), Finnegan, Henderson, Farabow, Garrett & Dunner, Reston, VA; R. Benjamin Cassady, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, Washington DC, counsel for Defendant BMW.

September 12, 2014

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition are Defendants BMW of North America LLC,

Ford Motor Company, General Motors LLC, Nissan North America Inc., Porsche Cars North

America Inc., and Mitsubishi Motors North America Inc.'s Motions for Rule 11 Sanctions.

(1:13-cv-00538-RGA D.I. 21; 1:13-cv-00539-RGA D.I. 21; 1:13-cv-00540-RGA D.I. 25; 1:13-

cv-00541-RGA D.I. 22; 1:13-cv-00542-RGA D.I. 22; 1:13-cv-00712-RGA D.I. 24).   These

matters have been fully briefed.  (1:13-cv-00538-RGA D.I. 22, 26, 28, 31, 56; 1:13-cv-00539

D.I. 23, 27, 29, 56; 1:13-cv-00540 D.I. 27, 31, 33, 57; 1:13-cv-00541 D.I. 53; 1:13-cv-00542 D.I.

23, 24, 27, 29, 56; 1:13-cv-00712 D.I. 25, 29, 31, 35, 58).   The Court heard oral argument on

June 27, 2014.  (1:13-cv-00538-RGA D.I. 52).  For the reasons set forth herein, the Defendants'

Motions for Rule 11 Sanctions are **GRANTED IN PART AND DENIED IN PART**.

### PROCEDURAL BACKGROUND

On April 5, 2013, Vehicle Operation Technologies ("VOT") brought six separate actions

against Honda, BMW, Ford, General Motors, Nissan, and Porsche alleging infringement of U.S.

Patent No. 7,145,442.  VOT filed an additional suit against Mitsubishi on April 23, 2013.

An initial scheduling conference was held on August 6, 2013.  During the conference, counsel

for BMW informed VOT that due to claim scope disavowal the case was ripe for immediate

dismissal.  BMW also requested leave from the Court to file a Rule 11 motion, which the Court

granted.

On September 30, 2013, Mitsubishi, Porsche, BMW, Ford, Nissan, and General Motors

filed motions for violation of Rule 11 by the Plaintiff and Plaintiff's attorneys.  (1:13-cv-00712-

RGA D.I. 24; 1:13-cv-00539-RGA D.I. 21; 1:13-cv-00541 D.I. 22).  Honda did not join in the

motions for violation of Rule 11.  (1:13-cv-00538-RGA D.I. 52 at 20).  On September 25, 2013,

2

five days prior to the Defendants bringing their Rule 11 motions, Plaintiff's *pro hac vice* attorneys, Marc A. Fenster, Esq., Alexander C. D. Giza, Esq., and John P. Hely, Esq., of Russ August & Kabat, withdrew from the case.  (1:13-cv-00538-RGA D.I. 20).[1]  On October 2, 2013, two days after the Defendants filed their Rule 11 motions, Eric W. Buether, Esq., Christopher M. Joe, Esq., Brian A. Carpenter, Esq., and Monica Tavakoli, Esq., of Buether Joe & Carpenter LLC filed for *pro hac vice* admission to represent the Plaintiff.  (1:13-cv-00538-RGA D.I. 23).  The Court granted this motion on October 10, 2013.  Throughout this litigation, lawyers from Bayard, P.A. have served as local counsel for the Plaintiff.  (1:13-cv-00538 D.I. 1 at 5).

## ANALYSIS

BMW and Mitsubishi move the Court to dismiss the case and to award attorney's fees and costs pursuant to Rule 11 for filing the present suit without the proper pre-suit investigation.  (1:13-cv-00538-RGA D.I. 22).  Ford, General Motors, and Porsche move the Court to dismiss for the same Rule 11 violation.  (1:13-cv-00540-RGA D.I. 27).  Nissan[2] joined BMW and Mitsubishi's motion for both dismissal and an award of attorney's fees and costs.  (1:13-cv-00541, D.I. 22).

### Plaintiff and Plaintiff's Attorneys Violated Rule 11

The determination of whether the Plaintiff and the Plaintiff's attorneys violated Rule 11 requires the determination of whether an objective pre-suit investigation would have disclosed that the accused products did not infringe the patent's claims.  The Court will address this in two parts: First, the Court will determine whether there exists a prosecution disclaimer that would

---

[1] The Defendants waived their Rule 11 motion against the attorneys associated with Russ August & Kabat during oral argument.  (1:13-cv-00538-RGA D.I. 52 at 21).

[2] VOT argued that Nissan had failed to provide it with notice of the proposed Rule 11 motion.  (D.I. 53 at 2).  Nissan provided evidence that it notified VOT on September 6, 2013 that it would join the Rule 11 motions.  (D.I. 59-1 at 2).  This is sufficient under Rule 11's safe harbor provision.  *See In re Mondelli*, 508 F. App'x 131, 135 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2864 (2013).

read out the accused vehicles' displays and thus prevent any infringement claim under the `442

patent.  Second, the Court will determine whether an objective pre-suit investigation would have

disclosed the prosecution disclaimer and that the accused products did not use dedicated

displays.

> 1) *Was there a prosecution disclaimer that would read out the accused vehicles' displays?*

> > a. *Prosecution Disclaimer*

I have already ruled on the issue of prosecution disclaimer and adopt those findings here.

(1:13-cv-00538 D.I. 52 at 5-12).  In sum, "The doctrine of prosecution disclaimer is well

established in Supreme Court precedent, precluding patentees from recapturing through claim

interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc, v. Raytek

Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (internal citations omitted).  With this in mind, I

found that here the prosecution history is clear.  "The inventor repeatedly and unambiguously

disclaimed the plain reading of the term 'display'" and specifically disclaimed any type of

display other than a "dedicated display." (D.I. 52 at 8, 9).  Furthermore, in an attempt to

overcome a prior art reference, the inventor unmistakably indicated that the "dedicated display"

had to present the relevant information "at all times."

> > b. *Literal Infringement*

"To show infringement of a patent, a patentee must supply sufficient evidence to prove

that the accused product or process contains, either literally or under the doctrine of equivalents,

every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court

Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  A patent claim is literally infringed when "every

limitation recited in the claim is found in the accused device, i.e., when the properly construed

claim reads on the accused device exactly." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398,

1405 (Fed. Cir. 1996). "The absence of even a single limitation of [a claim] from the accused

device precludes a finding of literal infringement." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472,

1477 (Fed. Cir. 1998).

The Plaintiff's complaints accuse Defendants' products of infringing the `442 patent.

Specifically, the Plaintiff, by example, accuses the following cars and technologies:

- BMW: X5 M and X6 vehicles when equipped with the "Super Handling-All Wheel Drive System." (1:13-cv-00537-RGA D.I. 1)

- Nissan: Nissan Juke and all of Nissan's other vehicles that are equipped with Nissan's "Torque Vectoring" system. (1:13-cv-00541-RGA).

- Ford: Ford Focus Electric, Ford C-Max hybrid, Ford Fusion Hybrid, Ford MKZ Hybrid, Ford Escape hybrid, and all of Ford's vehicles equipped with Ford's all wheel drive. (1:13-cv-00539-RGA).

- General Motors: Chevy Volt. (1:13-cv-00540-RGA).

- Porsche: 911 Carrera 4/4s all-wheel-drive models and other Porsche vehicles equipped with the Porsche Traction Management System. (1:13-cv-00542-RGA).

- Mitsubishi: Vehicles equipped with "Super All Wheel Control Systems. (1:13-cv-00712-RGA).

The Defendants argue that for each example vehicle there is no dedicated display, and as a

dedicated display is required by each patent claim, there can be no literal infringement. The

Court agrees.[3]

---

[3] The Court notes that on July 24, 2014, the Plaintiff filed a letter with the Court indicating that unless "at all times" was construed to mean when "the claimed system is activated," VOT would stipulate that none of the Defendants infringe the `442 patent. (1:13-cv-00538-RGA D.I. 55 at 4-5). If "at all times" means when "the claimed system is activated," VOT stated it could not say whether any of the Defendants' accused products infringe. If, however, "at all times" means when the display is on, VOT conceded that there could be no infringement under that construction. *Id.* at 3-4. The fine distinction that VOT raises about the meaning of "at all times," which was part of Defendants'

Porsche

The Plaintiff argues that the Porsche vehicles named in the complaint "include an apparatus that produces and monitors sensory data regarding drive torque of a Porsche vehicle and displays such information to a driver via a display. . . ."  (D.I. 1:13-cv-00539-RGA D.I. 27 at 17, 18).  The Plaintiff further maintains that the display is a "dedicated display."  *Id*.  The display referenced by the Plaintiff is depicted below.



(1:13-cv-00539-RGA D.I. 27 at 17).

The Defendants, however, point out that the publicly available manual for the display, identified by the Plaintiff, indicates that it is not a dedicated display, but is instead a display

---

proposed construction in the claim construction briefing (1:13-cv-00712-RGA D.I. 47 at 12-16), was not raised by VOT in response to Defendants' proposed construction.  (*See generally* 1:13-cv-00712 D.I. 48).

capable of providing a multitude of information as configured by the driver.  (1:13-cv-00542-RGA D.I. 23 at 13).   This is illustrated by the below picture from the Porsche Manual.



(1:13-cv-00542-RGA D.I. 23 at 13).  Thus, as literal infringement requires that all claim terms are present within the infringing device, and here each and every claim of the `442 patent requires a dedicated display that presents the claimed information at all times, and there is unmistakably no such display, the `442 patent cannot be literally infringed.[4]

General Motors

The Plaintiff argues that General Motors' exemplar vehicle, the Chevy Volt, infringes the `442 patent as it "monitors and displays the power consumption" via a dedicated display (shown below) "at any time."  (1:13-cv-00539-RGA D.I. 27 at 18, 19).

---

[4] The Court will take up the issue of DOE regarding all of the accused manufacturers' vehicles after addressing literal infringement for each manufacturer.



*Id.*  General Motors points out that that the display identified by the plaintiff is a "multi-function" display capable of presenting information as configured by the user.  (1:13-cv-00542-RGA D.I. 23 at 14).  It is evident from the Plaintiff's own description that the display is not a dedicated display, but is instead a display capable of presenting a multitude of information as selected by the user.  Therefore, there can be no literal infringement of any claim of the `442 patent.

<u>Ford</u>

The Plaintiff alleges that Ford's vehicles that are equipped with Ford's All Wheel Drive infringe the `442 patent.  (1:13-cv-00539-RGA D.I. 27 at 18).  In support of this argument, the Plaintiff argues that "Ford's all wheel drive vehicles include a display device that receives and displays the torque forces delivered at the wheels of a motor vehicle. . . ."  *Id.*  The Plaintiff points to the following image in support.



*Id*.  In response Ford argues that the displays present in the relevant vehicles are not dedicated displays that present the claimed information at all times.  (1:13-cv-00542-RGA D.I. 23 at 17). It is clear that the displays present "a variety of mode and view options."  For example, the owner's manual for the 2013 Ford Focus Electric, one of the accused vehicles, clearly indicates in its publicly available owner's manual that its displays are capable of presenting the following information:



(1:13-cv-00542-RGA D.I. 23 at 17, 18).  It is clear that the displays in the accused vehicles are not "dedicated displays" for the presentation of the claimed information at all times.  Therefore, there can be no literal infringement.

BMW

The Plaintiff accuses BMW's vehicles that are equipped with BMW's Dynamic Performance Control System, which "include[s] an apparatus that produces and monitors sensory data regarding drive torque of a BMW vehicle and displays such information to a driver via a display. . . ."  (1:13-cv-00538-RGA D.I. 26 at 16).  The Plaintiff points to the center console display in the vehicle, shown below, that is capable of showing torque distribution.  *Id.*



(1:13-cv-00538-RGA D.I. 26 at 17).  However, as Plaintiff's own brief explains, the display is user configurable, *i.e.*, a user must select certain options to display the torque information, and thus is not a "dedicated display" as it is capable of displaying other information.  *Id.*  VOT's own brief presents the following image as representative of BMW's accused system.

*Id*.  As the above image shows, to display the "torque distribution," the user must make various selections to view the "torque distribution" data, and thus is not a dedicated display.  Therefore, as BMW's display is not dedicated, there can be no literal infringement of the `442 patent.

<u>Mitsubishi</u>

The Plaintiff accuses Mitsubishi's vehicles equipped with the "Super All Wheel Control" system of infringing the `442 patent.  (1:13-cv-00538-RGA D.I. 26 at 18).  The Plaintiff contends that the center console display meets the limitations of the `442 patent as the alleged infringing system "include[s] an apparatus that produces and monitors sensory data regarding drive torque of a Mitsubishi vehicle and displays such information to a driver via a display. . . ."  *Id*.  In support of this argument, the Plaintiff cites the following image:



*Id.* As Mitsubishi points out, however, the publicly available owner's manual makes clear that the display identified by the Plaintiff is not a dedicated display that presents the claimed information at all times. (1:13-cv-00538-RGA D.I. 22 at 17). Instead, the user is able to cycle through various information, using a switch.



*Id.* Therefore, as the display is plainly not a dedicated display that presents the claimed information at all times, there can be no literal infringement of the `442 patent.

<u>Nissan</u>

The Plaintiff accuses Nissan of infringing the `442 patent and cites as an exemplar product the Nissan Juke. (1:13-cv-00541-RGA D.I. 1). However, the Nissan Juke's Vehicle Information Display can selectively show an odometer, twin trip odometer/trip computer, or

torque vectoring AWD display.  (1:13-cv-00541-RGA D.I. 22 at 2).  Furthermore, as the publicly

available Nissan Juke Owner's Manual makes clear, this information can be cycled through by

the user depressing the mode switch.  *Id*.  This is exhibited in the below images.





*Id*.  As is clear from the above images, the display does not constantly display the relevant

information, and thus is not a "dedicated display," let alone a dedicated display that presents the

claimed information "at all times."

In summary, it is indisputable that the vehicle models and technology identified as

exemplars by the Plaintiff, for each of the car manufacturers that filed Rule 11 motions, do not

literally infringe the `442 patent as they do not have a "dedicated display" that shows the claimed

information at all times.

### c.   Doctrine of Equivalents

For each of the Defendants, the Plaintiff additionally maintains that the Defendants infringe based upon the doctrine of equivalents.  (1:13-cv-00537-RGA D.I. 1; 1:13-cv-00541-RGA D.I. 1; 1:13-cv-00539-RGA D.I. 1; 1:13-cv-00540-RGA D.I. 1; 1:13-cv-00542-RGA D.I. 1; 1:13-cv-00712-RGA D.I. 1).

A patent claim may be infringed under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  To apply this doctrine, the fact finder must ask, "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?"  *Id.* at 40.  Further, "[t]he determination of equivalence should be applied as an objective inquiry on an element-by-element basis."  *Id.*  However, if during the prosecution of the patent the inventor surrenders subject matter originally covered by the claim in order to overcome a rejection from the patent office, the inventor cannot latter reclaim that scope through the doctrine of equivalents.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002).

As discussed above, it is clear that in order to overcome the PTO's rejection due to prior art, the inventor surrendered much of the scope of a display.  Specifically, the inventor limited the scope of the term display, by indicated that it was a "dedicated display" that presented the claimed information "at all times."  Therefore, as none of the aforementioned accused products has a dedicated display that presents the claimed information at all times, the products cannot infringe under the doctrine of equivalents, as all other forms of a display, other than a dedicated display showing the claimed information at all times, were surrendered by the inventor.

14

*2) Was there a Rule 11 violation?*

Rule 11 "provides that an attorney who fails to either 1) read the pleading; 2) make a reasonable inquiry into the factual and legal legitimacy of the pleading; or 3) file the pleading only for a proper purpose, shall be sanctioned." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). The purpose behind the rule is "to curb abusive litigation tactics and misuse of the court's process but . . . not . . . to hinder zealous advocacy. . . ." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). The Third Circuit has found that the relevant standard for compliance with this rule is that an attorney's conduct must be objectively reasonable under the circumstances. *Simmerman*, 27 F.3d at 62. In other words, the Third Circuit has explained that the goal of Rule 11 is to "impose[] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"[5] *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988).

To comply with the standards of Rule 11, an attorney must "conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Id.* (internal quotation marks omitted). It is paramount that the Court refrain from hindsight bias, as the attorney's conduct must be judged based upon what was reasonable at the time of the pleading, motion, or other paper. *Id.* Furthermore, the Court must be cautious when applying Rule 11, as it is not meant to act as an automatic penalty against an attorney for losing an argument or even to inhibit "imaginative legal or factual approaches. . . ." *Id.* Instead, the rule is meant to be applied sparingly to deter parties from filing baseless actions or frivolous motions. *See Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

---

[5] To the same effect, *see* Stephen Stills, *For What It's Worth* ("Stop, hey, what's that sound? Everybody look what's going down!").

The Defendants argue that the Plaintiff's counsel violated Rule 11 by bringing the present lawsuits. Specifically, the Defendants maintain that the Plaintiff did not conduct an adequate pre-suit investigation, as any reasonable pre-suit investigation would have "revealed that the asserted claims require[d] 'dedicated displays,'" whereas the Defendants' products use multi-function displays. (1:13-cv-00538 D.I. 22 at 15). Furthermore, the Defendants maintain that "even a cursory comparison of the prosecution history of the `442 patent to the publicly available information about the accused products clearly reveals (without expert analysis) the frivolity of VOT's infringement allegations. . . ." *Id.* at 15-16. The Defendants maintain that the inventor disclaimed any patent scope that could have covered the Defendants' multi-function displays and thus there is no basis in law or fact for VOT to assert an infringement claim against any of the defendants. *Id.* Conversely, the Plaintiff maintains that the Defendants' argument is based upon an inaccurate belief that the inventor disclaimed multi-function displays. (D.I. 27 at 16).

The Court will address whether the Plaintiff and the Plaintiff's attorneys complied with Rule 11 in two parts. First, the Court will look to whether the attorneys acted in an objectively reasonable manner under the circumstances when they interpreted the term "display." Second, the Court will look to whether the attorneys acted in an objectively reasonable manner under the circumstances when they determined that the Defendants' vehicles infringed the patent.

    *a.   Objectively reasonable construction of the term display*

The Plaintiff's attorneys have maintained that there was no prosecution disclaimer. Here, any reasonable pre-suit investigation should have included a review of the prosecution history of the `442 Patent, which would have included the USPTO's Notice of Non-Compliant Amendment of October 20, 2005 along with the inventor's November 9, 2005 amendment. As discussed in the Court's Markman Opinion, the inventor drew clear distinctions between his invention and

various other U.S. Patents.  (D.I. 52 at 5-12).  In each discussion, the inventor specifically disavowed claim scope to overcome a prior art reference.

The inventor's October 20, 2005 amendment unambiguously overcomes three prior art references, U.S. Patent No. 6,721,634, U.S. Patent No. 5,880,710, and U.S. Patent No. 4,594,572, by limiting the scope of his patent claim.  For instance the inventor states, in regards to the `634 patent, that the `634 patent utilized a "freely programmable instrument cluster within a vehicle whose various types of displays are selectable by the driver. These displays are not dedicated displays as with the present invention."  As I stated in my Markman Opinion, this statement alone is sufficient to disclaim part of the scope of the disputed terms and thereby require the term display to mean a "dedicated display."  The inventor made the same basic statements to the PTO concerning both the `710 and the `572 Patents. The inventor also clearly indicated that the display is to be dedicated "at all times" by stating, that the `345 Patent "is not a dedicated system which always presents specific types of information at all times as is done with the present invention. . . ."   (1:13-cv-00538-RGA D.I. 22-9 at 45).

While the Federal Circuit has "declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is ambiguous," the doctrine of prosecution disclaimer "is well established in Supreme Court precedent" and the Federal Circuit "ha[s] adopted that doctrine as a fundamental precept in [its] claim construction jurisprudence." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).  Here, an objectively reasonable pre-suit investigation would have led an attorney to the conclusion that the only plausible reading of the aforementioned disclaimers was to limit the scope of the term "display."[6]

---

[6] I do not lightly use the word "frivolous."  In my opinion, however, no reasonable attorney or judge could conclude that the argument that there was no disclaimer of claim scope was anything but frivolous.

In further support of the argument that Plaintiff's claim construction is reasonable, the Plaintiff argues that while the inventor may have discussed a "dedicated display," there was no discussion of a "multi-function display." (1:13-cv-539-RGA D.I. 27 at 12). While this is true, I think it is simply a matter of semantics. The inventor clearly limited his claim to "dedicated displays" that present the claimed information "at all times." By limiting the claim to "dedicated displays" the inventor was excluding all other forms of a display, including what the parties have termed a "multi-function display." The Court has not construed the term "multi-function display," but it is evident the term, as used by the parties, simply connotes a display that is capable of displaying a multitude of information as selected by some mechanism, such as user selection. It is not a dedicated display. The Plaintiff's argument that the inventor did not specifically disavow a "multi-function" display is literally true, but, at the same time, of no consequence. It would be the equivalent of the Plaintiff, choosing any other synonym for a non-dedicated display, pointing to that synonym, and stating that the inventor also did not specifically disavow that display either. Here, we have a clear, unambiguous disavowal of claim scope for non-dedicated displays, which would have been apparent in any pre-suit investigation. At any later time, with the issue having been disclosed in the Rule 11 motion, any reasonable counsel must have recognized the equivalent of a railroad crossing with the loud sound of a nearby train whistle.

In arguing that the Plaintiff's attorney's claims are objectively reasonable, the Plaintiff additionally maintains that the dependent claims of the `442 patent indicate that the term "display" must "clearly cover[] devices with multi-function displays." (1:13-cv-00539-RGA D.I. 27 at 10). This is not an accurate conclusion. It is well settled law that, independent of what is written in the claims, when an inventor disavows claim scope in the prosecution history, the

disavowal narrows the claim "congruent with the scope of the surrender." *Omega Eng'g*, 334
F.3d at 1324. Thus, independent of whether the dependent claim does in fact cover a "multi-
function" display, this scope has been disavowed. Any reasonable pre-suit investigation would
have come to this same conclusion.

>   *b. Objectively reasonable investigation of allegedly infringing vehicles*

The Court now turns its attention to whether an objectively reasonable pre-suit
investigation would have uncovered that each and every claim limitation did not read on the
accused devices, either literally or under the doctrine of equivalents. According to the
Defendants, and undisputed by the Plaintiff, the relevant displays' abilities were easily accessible
in publicly available owner's manuals. (1:13-cv-00538-RGA D.I. 22 at 17; 1:13-cv-00541-RGA
D.I. 22 at 2; 1:13-cv-00542-RGA D.I. 23 at 12-20). There is no doubt in the Court's mind that if
the Plaintiff's attorneys had performed the requisite pre-suit investigation, as, for example by
looking at the relevant pages of the owner's manual, it would have been evident that the accused
vehicles did not meet the display limitation of the `442 patent.

The Plaintiff's attorneys' continued insistence to litigate this matter, even after being
apprised by the Defendants that the accused products could not possibly infringe, further
highlights that the Plaintiff's attorneys simply turned a blind eye to the actual vehicles that they
were accusing of infringement. For example, regarding BMW's accused products, BMW's
counsel sent letters on at least five separate occasions to Plaintiff's counsel. (1:13-cv-00538-
RGA D.I. 22 at 24). BMW's counsel sent a letter on July 17, 2013 explaining how the inventor's
disclaimer excluded BMW's products. (1:13-cv-00538-RGA D.I. 22-1 at 20-23). Then on
August 5, 2013, after BMW had not received a response from Plaintiff's counsel concerning the
July 17, 2013 letter, BMW reiterated its arguments and warned the Plaintiff that it intended to

file a Rule 11 motion.  *Id*. at 25-26.  Similar letters were sent by the other defendants.  BMW additionally apprised the Plaintiff of the disclaimer issue at both the case scheduling conference on August 6, 2013 and when BMW served the Plaintiff with a copy of the present Rule 11 motion on September 4, 2013.  Furthermore, despite Plaintiff's current *pro hac vice* attorneys arguing that they should have had a clean slate from the time that they noticed the Court of their appearance, before they ever took the case, Eric W. Buether, Esq., Christopher M. Joe, Esq., Brian A. Carpenter, Esq., and Monica Tavakoli, Esq., of Buether Joe & Carpenter, LLC, had an obligation to review their client's file.  Here, this would include the letters sent by the Defendants and the owner's manuals.

For the reasons stated above the Court finds that a reasonable objective pre-suit investigation would have indicated that the present action is without any merit and violates Rule 11(b)(2).

<u>Sanctions</u>

BMW, Mitsubishi, Ford, General Motors, Porsche, and Nissan move the Court to dismiss their cases for violations of Rule 11.  BMW and Mitsubishi additionally move the Court to award attorney's fees and costs.

Rule 11 states:

(1) In General, If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

. . .

(4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order

> to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

FED. R. CIV. P. 11.

    *1. Dismissal*

    The Third Circuit has made clear that the goal of Rule 11 is "to impose[] on counsel a duty to look before leaping."  Here, there is no evidence that the Plaintiff or Plaintiff's counsel, whether local, previous *pro hac vice* or present *pro hac vice*, made any such attempt.  Instead, the Plaintiff and Plaintiff's counsel simply continued to litigate legally baseless arguments, such as the lack of a prosecution disclaimer.  They failed to take the Third Circuit's advice to "stop, look, and listen" once a Rule 11 motion was filed.  *Mary Ann Pensiero, Inc.*, 847 F.2d at 94. They made the very same baseless arguments after the Rule 11 motion was filed, at the Markman hearing and at oral argument on this motion.  *See id.*  It is evident that despite the warnings by the Defendants that there was prosecution disclaimer, and the filing of a Rule 11 motion, the Plaintiff and Plaintiff's attorneys continued to press their baseless arguments.

    While the Court is aware that it must be cautious in applying Rule 11 sanctions, it is evident to the Court that Plaintiff's attorneys failed at conducting an adequate pre-suit investigation.  While patent law is certainly complicated, prosecution history disclaimer is a bedrock of the patent world.  Here there was a single document, which was identified by the Defendants, which clearly showed, in combination with the publicly available vehicle owner's manuals, that the Defendants' products did not infringe.

Therefore, while dismissal of a lawsuit with prejudice is the harshest sanction available to the Court, it is warranted here.[7]  Plaintiff's attorneys litigated this suit for over a year, without regard to the prosecution disclaimer that made this suit objectively baseless, or for that matter Rule 11's basic requirement for an adequate pre-suit investigation.  Furthermore, as here the entire suit is objectively baseless, any lesser sanction would be ineffective.  The Court grants BMW, Mitsubishi, Ford, General Motors, Porsche, and Nissan's Motion For Rule 11 Sanctions as it pertains to their request for dismissal.

    *2.  Monetary Sanctions*

The Plaintiff's attorneys maintain that Rule 11 sanctions are not appropriate against the *pro hac vice* attorneys from Buether Joe & Carpenter, LLC, as they did not sign the original pleading and "we weren't given notice and an opportunity to take some action to cure [the] allege[d] Rule 11 motion."  (1:13-cv-00538-RGA D.I. 52 at 61).  Instead, the Plaintiff's attorneys maintain that the appropriate firm (if any) to be sanctioned is Russ August & Kabat. *Id.* at 61.[8]

The fact that the Plaintiff's current *pro hac vice* attorneys did not sign the original complaint does not prevent the Court from granting Rule 11 sanctions against them.  Rule 11 reads, "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, *or later advocating it*--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . ."  FED. R. CIV. P. 11(b) (emphasis added).  Here, while Eric W. Buether, Esq., Christopher M. Joe, Esq., Brian A. Carpenter, Esq., and Monica Tavakoli, Esq., did not

---

[7] This is not much of a sanction under the present circumstance, where it seems to the Court that a motion for summary judgment of non-infringement would be granted were one pending.

[8] The Court notes that as the Court found that Rule 11(b)(2) was violated, Rule 11 prevents the Court from awarding monetary damages against the represented party.  (*See* FED. R. CIV. P. RULE 11(c)(5)(A)).

sign the original complaint, by continuing the suit, they unquestionably "later advocated it."

Furthermore, the advisory committee note for Rule 11(b) reads in part:

> However, a litigant's obligations with respect to the contents of these papers are not 'measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time.

FED. R. CIV. P. 11, Advisory Committee Notes to the 1993 Amendment.  Here, not only did the *pro hac vice* attorneys from Buether Joe & Carpenter, LLC accept the case, despite there being a Rule 11 motion filed on the docket, but the attorneys argued at the Markman Hearing and Rule 11 hearing, and filed numerous briefs.  Thus, the attorneys affirmed to the Court that they were adopting the initial complaint as their own, and that they then believed that the complaint had merit and did not violate Rule 11.

The Court notes that the Plaintiff's *pro hac vice* attorneys filed a letter with the Court dated July 25, 2014 arguing that they could not be subject to Rule 11 sanctions.  (1:13-cv-00538 D.I. 56).  The attorneys make two main arguments.  First, "The filing of [their] notice of appearance does not even implicitly advocate anything in a previous pleading or other paper filed with a court by former counsel" as they may have been trying to narrow or modify a previously held position.  *Id.* at 2.  Second, their briefing of the Rule 11 motion did not serve to advocate any previously held position.  The Court finds these arguments to be meritless.  First, at no point have the *pro hac vice* attorneys from Buether Joe & Carpenter, LLC limited the suits in any meaningful way.  Thus, the attorneys' first argument seems to be a red herring.  Second, while it is certainly true that attorneys, or a client, can retain different counsel to defend against a Rule 11 motion without opening up the different counsel to possible liability for everything that has gone

on before that, this is not what occurred in this case.  Here, the *pro hac vice* attorneys from

Buether Joe & Carpenter, LLC were, and are, providing general representation to VOT regarding

this case.  Their actions in front of this Court have at no time been limited to the context of

defending the Plaintiff against the Rule 11 motion.  This is evidenced by the simple fact that the

*pro hac vice* attorneys from Buether Joe & Carpenter, LLC, and specifically Eric W. Buether,

Esq., who argued before the Court, represented their client in a Markman hearing just hours

before the Rule 11 motion.

It would be strange if the Court were to find that substituting counsel could not be held

responsible for prior pleadings that they later advocate.  This would allow for one set of

attorneys to file a lawsuit that violated Rule 11, for those attorneys to withdraw their appearance,

and then for the incoming attorneys to continue the lawsuit without sharing any of the

responsibility for its lack of merit.

Finally, the Court reluctantly finds that the Plaintiff's substitute counsels' argument that

the Defendants had to refile their Rule 11 motion has merit.  The Plaintiff's substitute counsel

noticed their appearance two days following the filing of the Rule 11 motion.  Substitute counsel

then defended the Rule 11 motion, filed all the relevant briefs, and argued for claim construction

positions consistent with the original complaint.  Counsel is expected to conduct a pre-suit

investigation before noticing their appearance.  A pending Rule 11 motion should have certainly

set off red flags in the minds of the attorneys and served to put the Plaintiff's attorneys on notice.

The Plaintiff's attorneys could not have missed the red flag, and should have spent additional

time reviewing the case file.  To now claim that they should not be subject to the Rule 11 motion

is contrary to reason.  However, until oral argument, BMW and Mitsubishi failed to put the

Plaintiff's new *pro hac vice* attorneys on notice that BMW and Mitsubishi would be seeking

monetary sanctions from them.  Therefore, the Court finds that Plaintiff's attorneys were not provided proper notice, and therefore may not be sanctioned under Rule 11.

However, if Counsel had been properly noticed that BMW and Mitsubishi were seeking sanctions against the Plaintiff's new counsel, the Court would certainly have found monetary sanctions appropriate against all of the Plaintiff's attorneys in this case.[9]  BMW and Mitsubishi argue that dismissal of the case alone is not adequate to deter Plaintiff's counsel from further violations of Rule 11.  The Court agrees.  The Plaintiff's attorneys here did more than simply continue to litigate a baseless lawsuit, but maintained these lawsuits despite being provided clear and undeniable evidence throughout the litigation that the Defendants could not infringe the `442 patent as a matter of law.  The attorneys acted in a willfully blind manner to the basics of patent law and the evidence they had in front of them.  They made legally baseless arguments not only to the opposing side, but to the Court.  Additionally, Plaintiff's current *pro hac vice* attorneys apparently failed to take heed of the pending Rule 11 motion when they took on the Plaintiff's case.  While a law firm may certainly take a lawsuit despite a pending Rule 11 motion, the pendency of the motion puts that law firm on notice that a diligent investigation is warranted before taking on the client.  Buether Joe & Carpenter, LLC failed to complete even the most basic of pre-engagement investigations, as that is surely all that would have been necessary to uncover the legal pitfalls of this case.

Turning to local counsel, their job is not complete when they attest to out of town counsels' competency under Local Rule 83.5.  It is local counsel's signature that is appended to the vast majority of documents here, and thus their culpability is on par with that of out of town counsel.  Local counsel should not only be reading documents that they sign as per Rule 11, but

---

[9] Of course, had the Defendants properly noticed new counsel, new counsel might have taken a different course of action.

be familiar enough with the relevant law to satisfy the requirements of Rule 11.  This was not done here.  However, just as *pro hac vice* attorneys were not noticed, BMW and Mitsubishi failed to notify local counsel that they would be seeking damages against them.   Specifically, BMW's opening brief for sanctions concludes by requesting damages against VOT, not VOT's counsel. (*See* 1:13-cv-538 D.I. 22 at 26).  Similarly, Mitsubishi's brief also does not request damages directly against VOT's counsel, but only against VOT as a party.  (*See* 1:13-cv-00712 D.I. 25 at 26).

Furthermore, Rule 11 is clear, absent exceptional circumstances, that a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.  The Court has been presented no evidence as to why this should not be the case here.  Therefore, the Court additionally finds that monetary sanctions would have been appropriate against Buether Joe & Carpenter, LLC and Bayard, P.A. if proper notice had been provided.

However, as notice was not provided, the Court denies BMW and Mitsubishi's request for monetary sanctions.

## Conclusion

For the reasons stated above, the Court will **GRANT** the Defendants' Motions for Rule 11 sanctions.  (13-cv-00538-RGA D.I. 21; 13-cv-00539-RGA D.I. 21; 13-cv-00540-RGA D.I. 25; 13-cv-00541-RGA D.I. 22; 13-cv-00542-RGA D.I. 22; 13-cv-00712-RGA D.I. 24).  The Court will further order that cases 13-cv-00538-RGA, 13-cv-00539-RGA, 13-cv-00540-RGA, 13-cv-00541-RGA, 13-cv-00542-RGA, and 13-cv-00712-RGA be **DISMISSED WITH PREJUDICE**.  The Court **DENIES** the motions as they relate to seeking sanctions against Plaintiff's attorneys.